U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2014 JUL 16 PM 1: 23

CLERK

BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

UNITED STATES OF AMERICA    )
                                 )
v.                              )        Case No. 5:12-cr-105
                                 )
FRANK CARABALLO         )

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION OF THE COURT'S MARCH 6, 2014 OPINION AND ORDER AND DENYING DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL
(Doc. 203; Docs. 180 & 194)

Defendant Frank Caraballo requests that the court reconsider its March 6, 2014 Opinion and Order denying his previous motions for judgment of acquittal in light of the Supreme Court's recent decision in *Rosemond v. United States*, 134 S. Ct. 1240 (2014). (Doc. 203.) Defendant contends *Rosemond* is an intervening change in the law on aiding and abetting and that in light of the jury instructions given during his trial, he could have been convicted under "an inappropriate standard" if the jury determined that he aided and abetted Melissa Barratt's death. *Id.* at 4. In his motion, Defendant cites *Rosemond* as grounds for acquittal on his 18 U.S.C. § 924(j) conviction.

Defendant further seeks the court's "clarification" in light of what Defendant characterizes as a "possible error" if the court "determined" that his previous motions for judgment of acquittal did not challenge the sufficiency of the evidence to sustain his conviction under § 924(j) for causing Ms. Barratt's death. *Id.* at 1-2.

The government objects to Defendant's motion because it is untimely and because Defendant cannot seek a judgment of acquittal based on alleged errors in the jury instructions under Fed. R. Crim. P. 29(c). The government further contends Defendant's challenges to the jury instructions were not preserved. If the court decides to reconsider its jury instructions, the government urges the court to find *Rosemond* inapplicable

because *Rosemond* addressed an aiding and abetting challenge to an 18 U.S.C. § 924(c) charge, which is not at issue here, and because *Rosemond* actually lightened the prosecution's burden in the Second Circuit to prove an individual had the intent to aid and abet the commission of a § 924(c) offense. The government argues that the court did not err in failing to address Defendant's alleged prior challenge to the sufficiency of the evidence supporting his § 924(j) conviction because no such challenge was raised.

The government is represented by Assistant United States Attorney Paul J. Van de Graaf and Assistant United States Attorney Joseph R. Perella. Defendant is represented by Mark A. Kaplan, Esq. and Natasha Sen, Esq.

## I.    Factual and Procedural Background.

### A.    Second Superseding Indictment.

Defendant was charged in a four count Second Superseding Indictment (the "Indictment"). Count One alleged Defendant participated in a conspiracy to distribute mixtures or substances containing a detectable amount of cocaine base, cocaine powder, and heroin, as part of a conspiracy involving 280 grams or more of a mixture or substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. §§ 841(a), (b)(1)(A), 846.

Count Two alleged Defendant used or carried a firearm during or in relation to, or possessed a firearm in furtherance of, the drug trafficking crime charged in Count One, with the allegations that Defendant discharged the firearm and caused the death of Melissa Barratt by murder, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii), (j)(1).

Count Three alleged Defendant used or carried a firearm during or in relation to, or possessed a firearm in furtherance of, a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).

Count Four alleged Defendant was a felon in possession of a firearm, with an allegation that Defendant had been convicted of four prior drug trafficking felonies, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), (e)(1). The court ordered the bifurcation of the trial of Count Four from the trial of Counts One through Three. *See United States v. Caraballo*, 2013 WL 4647787, at *5-6 (D. Vt. Aug. 29, 2013).

2

## B.     The Trial.

The trial on Counts One through Three commenced on September 16, 2013.  After eleven days of trial, the jury found Defendant guilty of conspiracy to distribute cocaine base, cocaine powder, and heroin, involving 28 grams or more but less than 280 grams of cocaine base (Count One); guilty of using or carrying a firearm during and in relation to, or possessing a firearm in furtherance of, the drug trafficking crime charged in Count One and of causing the death of Melissa Barratt by murder (Count Two); and guilty of using or carrying a firearm during and in relation to, or possessing a firearm in furtherance of, a drug trafficking crime (Count Three).  The jury found Defendant not guilty of discharging the firearm that killed Ms. Barratt, as alleged in Count Two.  After the jury rendered its verdict, Defendant stipulated to a prior felony conviction, waived his right to a jury trial, and pled guilty to being a felon in possession of a firearm (Count Four).

## C.     Post-Trial Motions and the Court's Opinion and Order.

After the jury's verdict, Defendant timely moved for a judgment of acquittal on Counts Two and Three of the jury's verdict.  (Docs. 180, 194.)  With regard to his conviction on Count Two, Defendant argued that the jury's verdict that he caused Ms. Barratt's death was inconsistent with the jury's verdict, finding him not guilty of discharging the firearm that killed her, particularly because the government's theory at trial was that Defendant, himself, discharged the firearm.  Defendant further argued that the evidence was insufficient for the jury to find that Defendant murdered Ms. Barratt in the course of violating § 924(c) and in the course of the underlying conspiracy.  Defendant also sought acquittal on his convictions on Counts Two and Three for possession of a firearm in furtherance of a drug trafficking crime.  He argued that the evidence presented during his trial—that he traded drugs for at least two different firearms—was insufficient as a matter of law to support his convictions under § 924(c)(1)(A).

On March 6, 2014, the court denied Defendant's motions for judgment of acquittal. (Doc. 202.) On March 5, 2014, the Supreme Court decided *Rosemond*. Neither party addressed *Rosemond* in briefing Defendant's original post-trial motions.

## II.     Conclusions of Law and Analysis.

### A.     Whether Defendant's Motion Is Timely.

The government contends that Defendant's *Rosemond* claim should be viewed as a new and untimely argument because Fed. R. Crim. P. 29(c)(1) provides that a motion for judgment of acquittal must be made "within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Pursuant to Fed. R. Crim. P. 45(b)(1)(B), however, the court "may extend the time, or for good cause may do so on a party's motion made . . . after the time expires if the party failed to act because of excusable neglect." While Rule 45(b)(2) formerly prohibited a court from extending the time to file motions under Rules 29 and 33 of the Federal Rules of Criminal Procedure, Rule 45(b)(2) was recently amended to exclude Rules 29 and 33 from this prohibition. The Advisory Committee Notes to the 2005 Amendments confirm that, by amending Rule 45(b)(2), "[t]he defendant is still required to file motions under Rules 29, 33, and 34 within the . . . period specified in those rules"; however, "under Rule 45(b)(1)(B), if for some reason the defendant fails to file the underlying motion within the specified time, the court may nonetheless consider that untimely motion if the court determines that the failure to file it on time was the result of excusable neglect." *Cf. United States v. Brown*, 623 F.3d 104, 113 n.5 (2d Cir. 2010) (recognizing "that under Rule 33 a defendant must bring a motion for new trial within 14 days of the verdict or finding of guilt, unless the [district] court finds that the late filing was the product of 'excusable neglect'"); *see also United States v. Sherman*, 2009 WL 1097906, at *3-4 (D. Conn. Apr. 22, 2009) (applying Rule 45(b)(1)(B) to belatedly-filed Rule 29 and 33 motions and finding excusable neglect warranting consideration of the motions on the merits).

"The Supreme Court [has] adopted a liberal test for assessing what neglect is excusable, emphasizing that 'the determination is at bottom an equitable one, taking account of all relevant circumstances[.]'" *Williams v. KFC Nat'l Mgmt. Co.*, 391 F.3d

411, 415 (2d Cir. 2004) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). Factors to consider include: (1) the danger of prejudice to the non-moving party, (2) the length of delay and impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the moving party, and (4) whether the moving party acted in good faith. *See Williams*, 391 F.3d at 415. "Excusable neglect's parameters are informed by, and roughly congruent with, the interests of justice." *United States v. Ramos*, 2012 WL 6708191, at *7 (D. Vt. Dec. 26, 2012) (internal quotation marks omitted).

While the government objects to Defendant's motion as untimely, the government identifies no prejudice it will suffer if the court reconsiders its prior Opinion and Order in light of *Rosemond*. Because Defendant's sentencing is currently set for September 8, 2014 and because a judgment has not yet been entered in Defendant's case, there is little prejudice to the government and no adverse impact on the court's proceedings if Defendant's belatedly-filed motion is considered. *See United States v. Frederick*, 868 F. Supp. 2d 32, 44-45 (E.D.N.Y. 2012) (finding excusable neglect, despite over two-year delay in filing Rule 33 motion for a new trial, because of "the lack of prejudice to the government," "the minimal disruption of pre-judgment proceedings," and "the fact that adjudication of defendant's . . . claim at this juncture of the case would be the most efficient resolution of defendant's claim"); *United States v. Stein*, 440 F. Supp. 2d 315, 325-26 (S.D.N.Y. 2006) (finding excusable neglect when government conceded no prejudice and when a determination of the belated motions, although the delay was entirely attributable to the moving parties, "would not so affect the future course of these proceedings as to warrant declining to consider the matter on the merits").

Although the delay between the verdict of October 2, 2013 and the filing of the pending motion of almost six months is lengthy, Defendant's motion for reconsideration was filed two weeks after the court's March 6, 2014 Opinion and Order denying Defendant's timely motions for judgment of acquittal. Moreover, any delay is not attributable to Defendant as the pending motion was filed in response to an intervening Supreme Court decision. *See Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d

5

Cir. 2003) (directing that courts should "focus[] on the third factor" of "the reason for the delay, including whether it was within the reasonable control of the movant") (internal quotation marks and footnotes omitted). There is also no evidence of bad faith.

For the foregoing reasons, the court finds that Defendant's delay in filing the pending motion is "excusable" pursuant to Rule 45(b)(1)(B), and Defendant's motion for reconsideration will be considered.

**B.     Whether Reconsideration Is Warranted in Light of *Rosemond*.**

"The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that . . . might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). A defendant may "obtain relief only when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 108 (2d Cir. 2013) (internal quotation marks omitted).

Defendant argues that the Supreme Court's decision in *Rosemond* is an intervening change in controlling law regarding aiding and abetting convictions under 18 U.S.C. § 924(c). Prior to *Rosemond*, "[u]nder the law of th[e Second] Circuit, a defendant '[could not] be convicted as an aider and abettor under § 924(c) merely because he knew that a firearm would be used or carried.'" *United States v. Masotto*, 73 F.3d 1233, 1240 (2d Cir. 1996) (quoting *United States v. Medina*, 32 F.3d 40, 45 (2d Cir. 1994)). Rather, "the defendant must have 'performed some act that directly facilitated or encouraged the use or carrying of a firearm.'" *Masotto*, 73 F.3d at 1240 (quoting *Medina*, 32 F.3d at 45). The parties dispute how *Rosemond* alters that standard and whether it has any impact on this case.

*Rosemond* arose from "a drug deal gone bad" in which the "buyers-turned-robbers" fled the scene after receiving marijuana without paying for it. *Rosemond*, 134 S. Ct. at 1243. As the getaway car sped away, one of its occupants fired shots from a semiautomatic handgun. Because the shooter's identity was disputed, the government

6

charged Rosemond (one of the vehicle's occupants and the suspected shooter) with using a gun in furtherance of a drug trafficking offense or, in the alternative, with aiding and abetting that offense. The *Rosemond* trial court instructed the jury on the general concept of aiding and abetting consistent with 18 U.S.C. § 2 and in a manner similar to the general aiding and abetting instruction given by this court.

The *Rosemond* trial court then addressed the essential elements of a charge of aiding and abetting in the context of a § 924(c) offense. *See id.* at 1245 ("The questions that the parties dispute, and we here address, concern how those two requirements—affirmative act and intent—apply in a prosecution for aiding and abetting a § 924(c) offense."). The Supreme Court concluded that only the intent element of the jury instructions was flawed because it failed to reflect the requirement that the "defendant's knowledge of a firearm must be advance knowledge—or otherwise said, knowledge that enables him to make the relevant legal (and indeed, moral) choice" to participate in an armed crime. *Id.* at 1249. Accordingly, under *Rosemond*, "[a]n active participant in a drug transaction has the intent needed to aid and abet a § 924(c) violation when he knows that one of his confederates will carry a gun." *Id.* at 1249.

Post-*Rosemond*, courts have addressed the issue of the requisite intent for an aiding and abetting § 924(c) conviction only in the context of an aiding and abetting charge. *See, e.g., United States v. Diaz-Castro*, 752 F.3d 101, 107 & n.4 (1st Cir. 2014) (rejecting *Rosemond* challenge from defendant who had been charged with aiding and abetting in the possession of a firearm in relation to a drug trafficking crime); *United States v. Davis*, 2014 WL 2599917, at *15-16 (11th Cir. June 11, 2014) (noting count charged "aiding and abetting a codefendant's possession of a firearm during" the alleged crime of violence, which is also proscribed under § 924(c), and leaving "the jury's finding on aiding and abetting [that count] undisturbed"); *see also United States v. Goldtooth*, 2014 WL 2611276, at *3-4 (9th Cir. June 12, 2014) (noting government proceeded on aiding and abetting theory because it could not prove which defendant had committed the crime of violence and concluding convictions could not "survive under the government's aiding and abetting theory" when no evidence indicated or allowed the

7

inference of "foreknowledge"). Defendant cites no case in which *Rosemond* has been implicated merely because the court accurately explained, in the course of its jury instructions, the concept of aiding and abetting. Defendant does not challenge the accuracy of that general instruction.

The *Rosemond* trial court instructed the jury that they could convict if "(1) the defendant knew his cohort used a firearm in the drug trafficking crime, and (2) the defendant knowingly and actively participated in the drug trafficking crime." *Rosemond*, 134 S. Ct. at 1244. A defendant's mere knowledge that one of his or her cohorts used a firearm in the course of the drug trafficking crime was thus deemed sufficient evidence of the requisite intent to aid and abet. The prosecutor in *Rosemond* drove this point home in closing argument by arguing that the jury could find the intent element of the aiding and abetting crime satisfied because "the fact is a person cannot be present and active at a drug deal when shots are fired and not know their cohort is using a gun. You simply can't do it." *Id.*

In contrast, in this case, Defendant was not charged with aiding and abetting a § 924(c) offense, and the court did not instruct the jury regarding the essential elements of an aiding and abetting a § 924(c) violation. With regard to the § 924(c) element of the § 924(j) charge, the court instructed the jury as follows:

> There are two elements of a Section 924(c) violation, both of which the government must prove beyond a reasonable doubt:
>
> FIRST:   That the defendant committed a drug trafficking crime, here, the crime of conspiracy to distribute heroin, cocaine, and cocaine base, as alleged in Count One of the indictment; and
>
> SECOND:   That the defendant either (1) knowingly used or carried a firearm during and in relation to such crime, or (2) possessed a firearm in furtherance of such crime.

(Doc. 166 at 23.) The verdict form submitted to the jury required the jury to find:

> As to the charge in Count Two of the indictment of using or carrying a firearm during or in relation to, or possessing a firearm in furtherance of,

8

the drug trafficking crime alleged in Count One of the indictment, do you unanimously find the Defendant Frank Caraballo not guilty or guilty[?]

(Doc. 171 at 2.)

Neither the Indictment, which was read to the jury, the jury instructions, the verdict form, nor the prosecution's closing argument suggested to the jury that it could convict Defendant of the § 924(c) component of a § 924(j) violation if Defendant merely knew, after the fact, that an alleged co-conspirator had discharged a firearm in the course of a drug trafficking offense.

The evidence at trial was equally inconsistent with any suggestion that Defendant was erroneously convicted of aiding and abetting a § 924(c) violation without the requisite intent. The evidence revealed that Defendant possessed, used, and carried firearms throughout the course of the drug conspiracy charged in Count One and that he personally traded drugs for two separate firearms on two different occasions. Co-conspirators testified that Defendant stored firearms, as well as his drugs and drug proceeds, in safes that he kept with him as he travelled to Massachusetts to purchase drugs and to Vermont to distribute those drugs. On the day of Ms. Barratt's murder, two eye witnesses testified that Defendant directed Joshua Lopez to remove a Glock 9mm handgun (previously obtained by Defendant in a drugs-for-guns transaction) from Defendant's safe in his car and deliver it to Defendant. Defendant then used the handgun to threaten Ms. Barratt in an attempt to recover his stolen drugs. Mr. Lopez testified that he then drove Defendant and Ms. Barratt to an isolated location, Defendant instructed Mr. Lopez to retrieve and load the same firearm, and Defendant shot Ms. Barratt in the head using this firearm causing her death. This evidence was clearly sufficient to establish the requisite intent required by *Rosemond*. *See Diaz-Castro*, 752 F.3d at 107 & n.4 (rejecting defendant's *Rosemond* challenge to the sufficiency of the evidence to support a § 924(c) conviction because defendant "clearly had advance knowledge that [a cohort] would have a firearm, since [the defendant] instructed [him] to bring it").

Defendant is thus correct that *Rosemond* "changed" the standard in the Second Circuit for aiding and abetting the commission of a § 924(c) offense. (Doc. 203 at 2.)

9

The government, however, is equally correct that *Rosemond* effectively lightened the government's burden of proof because the government need not prove the defendant directly facilitated or encouraged the use or carrying of a firearm (the former Second Circuit standard) but need only prove the defendant's advance knowledge that another would use or carry a firearm in a drug trafficking crime.

The court thus GRANTS Defendant's motion for reconsideration because it has reconsidered its jury instructions in light of *Rosemond*; however, the court DENIES Defendant's motion for judgment of acquittal because *Rosemond* does not render the court's jury instructions plainly erroneous. The court does not reach the government's further argument that a motion for acquittal under Fed. R. Crim. P. 29(c) is not a proper basis for challenging an alleged jury instruction error because vacating the conviction and a retrial, rather than an acquittal, is the sole remedy if that challenge is successful.

### C. Whether Reconsideration Is Warranted in Light of Any Purported Misconceptions in the Court's Previous Opinion and Order.

Defendant contends that his previous motion for judgment of acquittal challenged the sufficiency of the evidence supporting his conviction for causing the death of Ms. Barratt by murder in violation of § 924(j). (Doc. 180.) However, Defendant premised his previous motion on the alleged inconsistency of the verdicts within Count Two. The court addressed this argument and rejected it in light of the "well established" rule "that a criminal defendant cannot exploit any such inconsistency in the jury's verdicts to secure a new trial" because consistency in the verdicts is "not necessary." *United States v. Moran-Toala*, 726 F.3d 334, 336, 342 (2d Cir. 2013) (internal quotation marks omitted).

The court did not address a sufficiency of the evidence challenge by Defendant to his § 924(j) conviction because it was not clearly raised—as further evidenced by the fact that the government did not even respond to such a challenge in its comprehensive opposition. Defendant nonetheless points to statements in his initial motion for acquittal that arguably preserved his argument. *See* Doc. 180 at 8 ("There was no evidence at trial that Mr. Caraballo caused Ms. Barratt's death in any way other than discharging the Glock pistol. Nor was there any evidence that Mr. Caraballo caused anyone else to shoot

10

Ms. Barratt."); Doc. 180 at 11-12 ("There is no evidence that Mr. Caraballo directed or caused Mr. Lopez, or anyone else, to shoot Ms. Barratt. . . . Nothing in the trial record indicates that Mr. Caraballo asked or caused anyone else to shoot Ms. Barratt[.]"). The court will therefore address Defendant's motion for a judgment of acquittal challenging the sufficiency of the evidence to support his Count Two conviction for causing Ms. Barratt's death by murder.

In Count Two of the Indictment, Defendant was charged with causing Ms. Barratt's death in violation of § 924(j). To prove a violation of § 924(j), the government had to prove that Defendant caused the death of Ms. Barratt by murder through the use of a firearm in the course of violating § 924(c). It was undisputed at trial that Ms. Barratt was killed by a bullet wound to her head. Thus, the only element Defendant challenges is whether there is sufficient evidence to find beyond a reasonable doubt that Defendant caused Ms. Barratt's death by murder.

The jury found the government proved beyond a reasonable doubt that Defendant caused Ms. Barratt's death, but failed to prove beyond a reasonable doubt that Defendant discharged the firearm that killed her. Defendant argues that these conclusions cannot be reconciled with the evidence. The court disagrees.

In reviewing the sufficiency of the evidence, the court "must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor." *United States v. Payne*, 591 F.3d 46, 59 (2d Cir. 2010). The court must exclude modifying evidence and resolve "all . . . issues of credibility in favor of the verdict." *United States v. Howard*, 214 F.3d 361, 363 (2d Cir. 2000). The conviction must be sustained if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Over the course of the trial, the government presented ample evidence to explain Defendant's motive for killing Ms. Barratt, which was in retribution for her stealing a large amount of his drugs for which he owed his supplier payment. Defendant, himself, discussed this motive with a number of witnesses. Neither the government nor Defendant

11

presented any evidence to suggest that Joshua Lopez had an independent motive to kill Ms. Barratt. Rather, the evidence consistently revealed that at every step in the conspiracy, he acted at Defendant's direction and subject to his supervision. It also revealed that Mr. Lopez was a young, relatively inexperienced, and passive individual and that his primary role in the conspiracy was to act as Defendant's assistant and driver. In fact, Ms. Barratt and her roommate, Danielle Clemons, referred to Mr. Lopez as "Jeebes"—an apparent reference to the fictional character of Jeeves the butler. There was also evidence that Mr. Lopez was related to Defendant, considered him an older brother, sought to be trained by Defendant in the drug trade, and that family members pressured Mr. Lopez while the case was pending to remain loyal to Defendant.

In response to the missing drugs, Defendant accused and threatened the two individuals who had access to the safe where the drugs were secured—Ms. Barratt and Mr. Lopez. On the day of the murder, during a confrontation in Ms. Clemons's apartment, Ms. Clemons overheard several of Defendant's conversations on his cell phone in which he stated that someone had stolen his drugs and that he would shoot that person if he had to. Both Mr. Lopez and Ms. Clemons testified that Defendant threatened them as well as Ms. Barratt with the Glock handgun that was ultimately used to kill Ms. Barratt. At the time, Ms. Barratt was seated on a couch where she had concealed the drugs.

After the encounter in Ms. Clemons's apartment, several witnesses testified that Mr. Lopez drove Defendant and Ms. Barratt around the Brattleboro, Vermont area. One of Defendant's drug customers testified that Defendant called him en route in an attempt to collect a drug debt. Defendant told this customer about the stolen drugs, stated that the person who took it was with him (meaning either Mr. Lopez or Ms. Barratt), and that he needed to go somewhere "to make some noise." This phone call was corroborated by cell phone records.

The government presented evidence that Defendant came to believe that it was Ms. Barratt, not Mr. Lopez, who had stolen the drugs. This included a recording of a phone conversation with one of Defendant's brothers, during which Defendant stated that

12

he suspected Ms. Barratt had stolen the drugs from him and that he wanted to "bust off" whoever stole his drugs and that he wanted to "hurt somebody." Defendant's brother, in turn, urged him not to do it and to charge the loss of the drugs "to the game."

A bail bondsman testified that, during a phone conversation on the day of Ms. Barratt's murder while Defendant was attempting to recover money he had previously posted for Ms. Barratt's bail, Defendant told him that Ms. Barratt had stolen his drugs and that he was going to kill her. This phone call was also corroborated by cell phone records. The government thus presented overwhelming and uncontroverted evidence that on the day of her murder, Defendant threatened to kill Ms. Barratt because she stole his drugs.

At the scene of the murder in a remote location in a wooded area, Mr. Lopez testified that Defendant told him to retrieve the Glock from the vehicle, load it, and follow him and Ms. Barratt into the woods. Ms. Barratt sat down against a tree and refused to stand up when Defendant told her to do so. This was consistent with the position she was found in at the time of her death. Defendant again asked where the stolen drugs were. In response, Ms. Barratt asked if she could see the nephew she was raising as her own son, and Defendant told her that she had forfeited that right. Ms. Barratt told Defendant, "Don't be a pussy. He doesn't need to be here for this," or words to that effect, referring to Mr. Lopez. According to Mr. Lopez, Defendant then shot and killed Ms. Barratt. Mr. Lopez's description of the location of Defendant and Ms. Barratt at the time of the shooting was consistent with expert witness testimony regarding the trajectory of the bullet.

The government also presented evidence that there were two individuals seen coming out of the woods shortly after and in the location of Ms. Barratt's murder and that Defendant's cell phone was in the proximity of this location at the estimated time of Ms. Barratt's death. The government presented evidence that Defendant discarded the clothing both he and Mr. Lopez wore during the murder and that he switched vehicles in Massachusetts thereafter.

Both Defendant and Mr. Lopez were arrested the day after the murder. Some of Ms. Barratt's property was found in the vehicle they were operating. Ms. Clemons testified that, on the day after the murder, Defendant and Mr. Lopez returned to the apartment she shared with Ms. Barratt, took Ms. Barratt's television and computer, and that Defendant then wiped off Ms. Barratt's cell phone on his shirt, gave it to Ms. Clemmons, and indicated Ms. Barratt would no longer be needing it. Photos of the television and computer in the trunk of the vehicle in which Defendant and Mr. Lopez were arrested were shown to the jury.

In a post-arrest interview, Defendant made several false exculpatory statements about when he had last seen Ms. Barratt and about his whereabouts at the time of the murder. In this same interview, when asked whether Mr. Lopez would have killed Ms. Barratt, Defendant responded that Mr. Lopez would not hurt anyone, not even a fly. In his own post-arrest interview, Joshua Lopez made admissions that he had participated in the crime, which were corroborated by text messages he sent to a friend that stated that he did not want to do so, but that "he and his bro had to take care of some shit," or words to that effect.

The government introduced numerous jail house recordings in which Defendant made various admissions, continued his drug dealing business from his jail cell, and urged members of the conspiracy to remain loyal. In one of these jail house recordings, Defendant told one of his brothers that if Defendant "left his case in God's hands, he would be in the gas chamber."

While the government did not present evidence that Mr. Lopez was directed to kill Ms. Barratt, based upon the evidence presented, a rational jury could conclude beyond a reasonable doubt that Defendant caused Ms. Barratt's death by murder, using a fireman that was also used in furtherance of a drug trafficking offense, even if it could not determine beyond a reasonable doubt who pulled the trigger. This conclusion was fully consistent with the limited forensic evidence collected at the scene of the crime. It was also consistent with Defendant's counsel's repeated and vigorous argument that Mr. Lopez shot Ms. Barratt. The unintended consequences of this argument may have been

14

that the jurors found it created reasonable doubt on the discharge component of the § 924(j) offense, but that it did not alter their conclusion that if Mr. Lopez discharged the Glock that killed Ms. Barratt, he did so only at Defendant's direction.

When the evidence is viewed in the light most favorable to the government, "a rational jury could conclude beyond a reasonable doubt that [Defendant was] guilty of the crime charged" of causing Ms. Barratt's death by murder. *United States v. Eppolito*, 543 F.3d 25, 45 (2d Cir. 2008) (internal quotation marks omitted). Defendant's motion for judgment of acquittal of his § 924(j) conviction for causing the death of Ms. Barratt by murder is therefore DENIED.

## CONCLUSION

For the foregoing reasons, the court GRANTS Defendant's motion for reconsideration of the court's March 6, 2014 Opinion and Order denying his previous motions for judgment of acquittal (Doc. 203) and DENIES that motion upon reconsideration. Because there was sufficient evidence to support the jury's verdict finding Defendant guilty of causing Ms. Barratt's death, the court also DENIES Defendant's motion for judgment of acquittal with regard to his § 924(j) conviction. (Doc. 180.)

SO ORDERED.

Dated at Rutland, in the District of Vermont, this __16th__ day of July, 2014.

Christina Reiss, Chief Judge
United States District Court